HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAREN GINSBURG, et al.,

    Plaintiffs,

    v.

COMCAST CABLE COMMUNICATIONS MANAGEMENT LLC,

    Defendant.

CASE NO. C11-1959RAJ

ORDER

This matter comes before the court on Plaintiffs' motion for reconsideration of the court's April 17 order denying class certification. For the reasons stated below, the court DENIES the motion. Dkt. # 107.

Motions for reconsideration are disfavored. Local Rules W.D. Wash. LCR 7(h)(1). To succeed on reconsideration, a party should point to "manifest error" or "new facts or legal authority" that the party could not have brought to the court's attention sooner. *Id.*

The court declined to certify a class of thousands of workers at Defendant's three Washington call centers. Plaintiffs had at least raised factual questions as to whether Defendant failed to properly compensate those employees for work they performed at the beginning of their shifts. What Plaintiffs did not do, however, was demonstrate that the common legal and factual questions that the class members' claims presented

ORDER – 1

1  predominated over questions requiring individualized proof.  The court accordingly ruled
2  that Plaintiffs had failed to satisfy the predominance requirement of Federal Rule of Civil
3  Procedure 23(b)(3).
4        On reconsideration, Plaintiffs harp on Defendant's formal policies, despite
5  substantial evidence that those policies are not reflective of working life at Defendant's
6  call centers.  Plaintiffs contend that formal policies dictate that the first act of an
7  employee's workday is logging in to his or her computer, and that the same policies
8  prohibit them from using their computers for personal purposes.  Plaintiffs do not
9  mention the evidence that the court recounted in the April 17 order, evidence that shows
10 that Defendant's employees do not uniformly follow those policies.  Some start work
11 with tasks other than logging in.  Some log in but do not perform work.  Defendant's
12 policies are enticingly uniform; the reality of its employees' conduct is not.  Plaintiffs
13 must concede as much.  After all, Defendant's policies prohibit off-the-clock work,
14 whereas Plaintiffs insist that Defendant makes or permits its employees to work off the
15 clock without compensation.  Plaintiffs cannot tout the difference between policy and
16 reality as the basis of their lawsuit and then insist that policy invariably reflects reality
17 when it suits them.
18       As the court noted at length in the April 17 order, class members' allegedly off-
19 the-clock work defies uniform characterization.  Plaintiffs do not address that more than
20 77 supervisors were responsible for daily oversight of class members' work, and that the
21 evidence reveals that the practices that allegedly led to off-the-clock work varied widely
22 from supervisor to supervisor.  Even if upper-level management created performance
23 expectations that increased the pressure to work off-the-clock, the evidence shows that it
24 was individual supervisors, following no consistent pattern, who applied that pressure (or
25 did not) to class members who worked for them.

ORDER – 2

1   Plaintiffs also insist that whether Defendant knew that class members worked off
2 the clock is a common question that will drive this litigation to a resolution. The
3 evidence shows otherwise. Plaintiffs believe that Defendant should have compared data
4 from two different computer systems (as Plaintiffs' expert did) to reveal disparities
5 between the beginning of shifts and initial computer log-in times. But, as the court
6 explained in April, that comparison does not reveal off-the-clock work, it reveals a
7 disparity that can be translated into off-the-clock work only by considering evidence from
8 *each* class member.

9   Plaintiffs' answer to these individualized questions is often "representative
10 evidence." That approach might permit Plaintiffs to present their claims, but it does not
11 address Defendant's right to present individualized evidence to show that class members
12 did not work off the clock. Defendant would present evidence that each class member
13 had different practices as to how to begin his or her workday, practices influenced by the
14 requirements of at least 77 supervisors. Defendant already did so for 50 putative class
15 members on summary judgment. It has the right to do so for each of the thousands of
16 members of the putative class.

17   While their motion for reconsideration was pending, Plaintiffs asked the court to
18 consider two recent appellate opinions. The first, *Leyva v. Medline Indus. Inc.*, 716 F.3d
19 510 (9th Cir. 2013), emphasizes what is missing in this case. *Leyva* concerned four
20 wage-and-hour policies applied uniformly to all class members, including a policy of
21 rounding all shift start times to the next half hour. *Id.* at 512 (explaining that an
22 employee who clocked in at 7:31 a.m. would be paid as if she had logged in at 8:00 a.m.).
23 Here, as the court explained in April, there is no policy that Defendant applied uniformly
24 to all class members, and thus no classwide means of proving liability.

25   Both *Leyva* and the second new case to which Plaintiffs point, *Butler v. Sears,*
26 *Roebuck & Co.*, Nos. 11-8029, 12-8030, 2013 U.S. App. LEXIS 17748 (7th Cir. Aug. 22,

ORDER – 3

2013), emphasize that the need to determine damage claims individually is not, by itself, a reason to deny class certification. *Leyva*, 716 F.3d at 513. In a case where a class representative can establish liability on a classwide basis, "separate hearings to determine – if liability is established – the damage of individual class members or homogeneous groups of class members . . . will often be the sensible way to proceed." *Butler*, 2013 U.S. App. LEXIS 17748, at *10; *see also Leyva*, 716 F.3d at 514 (noting that the defendant employer's "computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties for each claim"). In this case, Plaintiffs' inability to prove liability on a classwide basis is inextricably intertwined with their inability to prove damages. Plaintiffs can show, for example, that a hypothetical Jane Smith routinely logged in to her computer 15 minutes before her shift began. But that showing means nothing without an inquiry into whether Ms. Smith logged in for personal or professional purposes or whether she actually worked during that 15 minutes. That inquiry will be necessary for every worker for whom Plaintiffs calculate a disparity. As the court noted in April, the comparison of log-in times to shift start times on which Plaintiffs rely does not prove liability, much less damages, it merely sets the stage for an individualized inquiry into whether each employee's log-in time represented the beginning of work for the day.

Even when an employer's wage-and-hour policies apply uniformly across a class, certification is not necessarily appropriate. Just this month, the Ninth Circuit vacated a class certification order in a case challenging an employer's uniform practice of classifying reporters and account executives as employees exempt from overtime regulations. *Wang v. Chinese Daily News, Inc.*, No. 08-55483, 08-56740, 2013 U.S. App. LEXIS 18245, at *15 (9th Cir. Sept. 3, 2013). Even where policies are uniformly applied, the court emphasized, individual issues may make class treatment impossible.

ORDER – 4

*Id.* at *16. Here, individualized issues make it impossible to determine even if Defendant is liable.

This case presents a quandary that is not uncommon in requests for class certification. There is evidence that at least raises serious questions as to whether Defendant underpaid a large number of its workers. Evidence of widespread harm understandably steers attorneys toward a class action, the only means of resolving harm to large numbers of plaintiffs that is enshrined in the Federal Rules of Civil Procedure.[1] Were class certification simply a decision about the equity of remedying relatively small harms imposed on a relatively large number of people, then the court's decision in April (and today) might have been different. But the court is bound by the standards of Rule 23 and the case law that interprets them. Under those standards, the court reaffirms its April decision.

DATED this 24th day of September, 2013.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Court Judge

---

[1] The class action is, of course, not the only means of remedying harm to many plaintiffs. The Washington wage-and-hour laws that Plaintiffs invoke mandate exemplary damages for violations and permit the recovery of attorney fees.

ORDER – 5